Our File No. TAR-329-CM
**ATTORNEY ID - 050371991**
FISHMAN MCINTYRE SAMANSKY, P.C.
120 Eagle Rock Avenue
East Hanover, New Jersey 07936
Tel: (973) 560-9000
Attorneys for Defendants, Target Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HECTOR EMMANUEL VARGAS SANTOS: | |
| Plaintiff, | |
| -vs- | CIVIL ACTION NO. |
| TARGET CORPORATION, JOHN DOES 1-10, JANE DOES 1-10, ABC CORPORATIONS 1-10 fictitious entities | |
| Defendants | |

**PETITION FOR REMOVAL**

Petitioner, Target Corporation, by its attorneys, Fishman McIntyre Samansky, P.C., respectfully petitions the United States District Court for the District of New Jersey as follows:

1. Based on information and belief, Target Corporation first received a copy of the Complaint on or about September 29, 2026 through their registered agent.

2. This case was commenced on September 16, 2026 in the Superior Court of New Jersey, Law Division, Hudson County Suit is identified in the Superior Court as Santos, Hector Emmanuel Vargas v. Target Corporation, Docket No. HUD-L-3851-26. (See Exhibit A)

3. The filing of this Petition for Removal is timely because it is filed within thirty days of the date Target Corporation first received notice of the lawsuit.

4. The plaintiff's Complaint in the Superior Court of New Jersey, Law Division, Hudson

County, asserts damages of a non-specified amount. Plaintiff, Hector Emmanuel Vargas Santos, alleges an all-steel shovel fell from an elevated or overhead shelf and struck plaintiff in the head and was caused to sustain injuries. As such, Target Corporation, believes the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Target Corporation is informed and believes that Plaintiff, Hector Emmanuel Vargas Santos, is an individual citizen of the State of New Jersey. Defendant/petitioner, Target Corporation is incorporated in the State of Minnesota and its principal place of business is in the State of Minnesota. The action is therefore between citizens and a corporation of other states.

6. Accordingly, this action is removable to this Court pursuant to 28 U.S.C. § 1441.

WHEREFORE, Petitioner, Target Corporation, defendants in the action described herein, which is currently pending in the Superior Court of the State of New Jersey, Law Division, Hudson County, Docket No. L-3851-26, prays that this action be removed therefrom to this Court.

DATED: October 21, 2026

Target Corporation

BY:______________________________
Christopher E. McIntyre, Esq.

I certify that a true copy of the Complaint filed in the Superior Court of the State of New Jersey, County of Hudson, along with a copy of the Summons issued to this defendant, is annexed hereto as Exhibit A.

BY:______________________________
Christopher E. McIntyre, Esq.

# EXHIBIT A

Tyrone A. Blackburn, Esq.
T. A. BLACKBURN LAW, PLLC
Attorney ID No. 232602020
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com
*Counsel for Plaintiff*

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION — HUDSON COUNTY

| | |
|---|---|
| Hector Emmanuel Vargas Santos,<br>Plaintiff,<br>v.<br>Target Corporation;<br>JOHN DOES 1-10, fictitious individuals;<br>JANE DOES 1-10, fictitious individuals; and<br>ABC CORPORATIONS 1-10, fictitious entities,<br>Defendants. | Docket No.<br><br>Complaint and Jury Demand |

Plaintiff, Hector Emmanuel Vargas Santos, complaining of Defendants, alleges as follows:

## PARTIES

1. Plaintiff Hector Emmanuel Vargas Santos is an individual residing at 548 Garfield Avenue, Apartment 2, Jersey City, New Jersey 07305.
2. At all relevant times, Plaintiff was lawfully present as a customer and business invitee at Target Store #381, located on Route 440 in Jersey City, Hudson County, New Jersey.
3. Defendant Target Corporation was, at all relevant times, the owner, operator, manager, occupier, maintainer, merchandiser, and/or entity otherwise responsible for Target Store #381, including its sales floor, shelving, merchandise displays, stocking procedures, safety practices, customer-accessible areas, and employees.
4. Defendant Target Corporation conducts retail business in New Jersey, including Hudson County, and purposefully availed itself of the privilege of conducting business in this State.
5. Defendants John Does 1-10 are fictitious individuals whose true names and capacities are presently unknown to Plaintiff. Upon information and belief, each John Doe was an employee, agent, manager, supervisor, stocker, merchandiser, contractor, or other person whose acts, omissions, carelessness, negligence, and/or breach of duty caused or contributed to Plaintiff's injuries and damages.
6. Defendants Jane Does 1-10 are fictitious individuals whose true names and capacities are presently unknown to Plaintiff. Upon information and belief, each Jane Doe was an employee, agent, manager, supervisor, stocker, merchandiser, contractor, or other person whose acts, omissions, carelessness, negligence, and/or breach of duty caused or contributed to Plaintiff's injuries and damages.

7. Defendants ABC Corporations 1-10 are fictitious entities whose true names, corporate forms, addresses, and capacities are presently unknown to Plaintiff. Upon information and belief, each ABC Corporation owned, operated, managed, controlled, maintained, supplied, serviced, inspected, stocked, merchandised, supervised, manufactured, distributed, installed, and/or was otherwise responsible for the store, shelving, merchandise, equipment, display systems, operations, personnel, or safety practices that caused or contributed to Plaintiff's injuries and damages.
8. Plaintiff will amend this Complaint to substitute the true names and capacities of the fictitious defendants when those identities are learned through discovery or otherwise.
9. At all relevant times, the individual defendants acted within the course and scope of their employment, agency, contract, and/or other relationship with Target Corporation, one or more ABC Corporations, or both.
10. At all relevant times, Defendants acted jointly, severally, independently, in concert, and/or through their actual or apparent agents, employees, representatives, contractors, managers, and supervisors.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this civil action.
12. This Court has personal jurisdiction over Target Corporation because it conducts business in New Jersey and Plaintiff's claims arise from the operation, maintenance, merchandising, and management of a retail store in Jersey City, New Jersey.
13. This Court has personal jurisdiction over the fictitious defendants because, upon information and belief, their conduct occurred in New Jersey and caused or contributed to Plaintiff's injuries in Hudson County.
14. Venue is proper in Hudson County because the occurrence giving rise to this action took place in Hudson County and Plaintiff resided in Hudson County at the commencement of this action.

## FACTUAL ALLEGATIONS

15. On May 17, 2026, Plaintiff was shopping at Target Store #381 on Route 440 in Jersey City, New Jersey.
16. Target Store #381 operated as a self-service retail store in which customers were invited, permitted, and expected to walk through sales areas and independently select merchandise displayed on shelving and store fixtures.
17. While Plaintiff was lawfully shopping in the store, an all-steel shovel fell from an elevated or overhead shelf and struck Plaintiff in the head.
18. The shovel was heavy merchandise that Defendants, or their employees, agents, contractors, and representatives, placed, stored, stocked, displayed, maintained, and/or permitted to remain on elevated shelving in a customer-accessible retail area.
19. Plaintiff's partner witnessed Plaintiff lose consciousness after the shovel struck him.
20. Plaintiff arrived at Bayonne University Hospital's Emergency Department by walk-in at approximately 12:40 a.m. on May 18, 2026, reporting that a shovel had struck his head at Target and reporting dizziness and a scalp laceration.
21. At triage, Plaintiff reported pain at a level of nine out of ten and was assigned Emergency Severity Index Level 2, an emergent-priority classification.
22. Plaintiff underwent a trauma assessment and evaluation for blunt head injury, including CT imaging of his head and cervical spine.

23. The head CT showed no acute intracranial hemorrhage, mass effect, midline shift, or acute fracture.
24. The cervical-spine CT showed mild degenerative disc disease at C5-C6 and C6-C7, without acute fracture or subluxation.
25. Emergency Department personnel diagnosed Plaintiff with an unspecified head injury, scalp abrasion, and injury caused by a falling object.
26. Plaintiff sustained a two-centimeter left frontal scalp abrasion extending to the subdermis, with pain and discomfort at the injury site.
27. Emergency Department personnel cleansed Plaintiff's scalp wound and closed it with Dermabond. Plaintiff also received acetaminophen, a tetanus booster, and observation.
28. Plaintiff was discharged home in improved condition during the early morning of May 18, 2026, after emergency evaluation and treatment.
29. At discharge, Plaintiff was instructed to avoid strenuous activity, monitor his symptoms, have family or friends monitor him for unusual drowsiness or other symptoms, and return for emergency evaluation if symptoms worsened.
30. Plaintiff was instructed to obtain primary-care follow-up within one to two days for symptom review and wound reassessment, and was referred for neurology, ear-nose-throat, and orthopedic or spine evaluation as appropriate.
31. The Emergency Department identified Dr. Luis F. Luna as Plaintiff's primary-care provider and identified Dr. Ashish Kapoor for neurological follow-up.
32. The medical charges arising from Plaintiff's May 18, 2026, emergency treatment and related services were billed in the amount of $41,409.62, with insurance adjustments of $40,287.28 and a stated patient balance of $1,122.34.
33. Before the incident, Plaintiff was a 100% service-connected disabled United States Marine veteran with a documented psychological baseline that included post-traumatic stress disorder, attention-deficit/hyperactivity disorder, chronic adjustment disorder, and obstructive sleep apnea managed with CPAP.
34. The head trauma caused by the falling shovel aggravated, exacerbated, accelerated, and worsened Plaintiff's preexisting physical and psychological vulnerabilities.
35. Since the incident, Plaintiff has experienced severe and persistent headaches, disrupted sleep, dizziness, increased irritability, anger, and worsening symptoms of post-traumatic stress disorder.
36. Plaintiff has experienced dizziness while driving, including episodes in which he veered toward the side of the road, impairing his ability to safely drive.
37. Plaintiff's ongoing symptoms have impaired his daily functioning, caused pain and emotional distress, and diminished his quality and enjoyment of life.
38. The hazardous condition was created by the manner in which the shovel was placed, stocked, stored, displayed, secured, maintained, inspected, and/or permitted to remain on elevated shelving.
39. Defendants possessed exclusive or superior knowledge of the store's shelving configuration, product-storage practices, stocking procedures, merchandising practices, employee training, inspection protocols, safety rules, incident documentation, surveillance footage, and related records.
40. Defendants knew or should have known that displaying, stocking, storing, or permitting a heavy steel shovel to remain unsecured or inadequately secured on elevated shelving in a self-

service retail environment created a foreseeable risk that the shovel could fall and strike a customer below.

41. Defendants knew or should have known that customers would walk near, beneath, and around merchandise displays and shelving containing merchandise stored above customer level.
42. Defendants knew or should have known that customers in a self-service retail environment could interact with merchandise, shelving, packaging, displays, and fixtures, thereby increasing the foreseeable risk that improperly stored or unsecured merchandise could become dislodged or fall.
43. Defendants failed to use reasonable care to maintain the premises, shelving, merchandise displays, and merchandise in a reasonably safe condition for Plaintiff and other customers.
44. The exact identities, respective roles, and degrees of fault of the fictitious defendants remain within Defendants' knowledge and control and will be established through discovery.
45. Plaintiff has incurred past medical charges of $41,409.62 for the emergency treatment and associated services arising from the occurrence.
46. The nature, extent, duration, permanency, necessity, and cost of Plaintiff's past and future treatment remain subject to continuing medical evaluation and treatment.

## COUNT I
## NEGLIGENCE
## (Against All Defendants)

47. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.
48. Defendants owed Plaintiff a duty to exercise reasonable care in the ownership, operation, management, maintenance, inspection, stocking, merchandising, supervision, and control of Target Store #381 and its merchandise displays.
49. Defendants owed Plaintiff a duty to take reasonable measures to prevent heavy merchandise, including all-steel shovels, from falling from elevated shelves into areas used by customers.
50. Defendants owed Plaintiff a duty to implement, maintain, enforce, and supervise reasonable policies and procedures governing the safe stocking, storage, display, inspection, and securing of heavy merchandise placed at elevated heights.
51. Defendants breached their duties to Plaintiff by acts and omissions including:
    a. Placing, stocking, storing, displaying, and/or permitting a heavy all-steel shovel to remain on an elevated shelf in an unsafe manner;
    b. Failing to secure, restrain, stabilize, brace, position, or otherwise safely maintain the shovel to prevent it from falling;
    c. Failing to use appropriate shelving, fixtures, retaining devices, guards, barriers, or other protective measures for heavy merchandise stored above customer level;
    d. Failing to inspect the shelf, shovel, merchandise display, and surrounding area with reasonable frequency and care;
    e. Failing to discover and correct the dangerous condition before Plaintiff was struck;
    f. Failing to remove, reposition, secure, or otherwise address the dangerous condition before Plaintiff was injured;
    g. Failing to implement and enforce adequate stocking, merchandising, inspection, maintenance, and safety procedures for heavy merchandise stored at elevated heights;
    h. Failing to adequately train and supervise employees, agents, contractors, and personnel responsible for stocking, maintaining, inspecting, and securing merchandise;
    i. Failing to adequately staff, supervise, and monitor the affected sales area;

j. Failing to warn Plaintiff and other customers of the danger posed by the unsecured or improperly stored shovel; and
k. Otherwise failing to exercise reasonable care under the circumstances.

52. Defendants' unsafe placement, storage, display, stocking, maintenance, and/or failure to secure the shovel created the hazardous condition that caused Plaintiff's injuries.
53. Alternatively, the hazardous condition existed for a sufficient period that Defendants knew or, in the exercise of reasonable care, should have known of it and corrected it before Plaintiff was injured.
54. The risk that a heavy steel shovel would fall from overhead shelving and strike a customer in the head was foreseeable, preventable, and unreasonably dangerous.
55. Defendants' conduct was a direct and proximate cause of the shovel falling, striking Plaintiff's head, and causing his physical injuries, pain, medical treatment, aggravation of preexisting conditions, emotional distress, and economic losses.
56. As a direct and proximate result of Defendants' negligence, Plaintiff has sustained and will continue to sustain substantial damages, including past and future medical expenses, pain and suffering, emotional distress, mental anguish, aggravation of preexisting conditions, disability, impairment, inconvenience, diminished quality and enjoyment of life, and other damages recoverable by law.

## COUNT II

Negligence Arising from Defendants' Self-Service Mode of Operation
(Against All Defendants)

57. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.
58. Defendants elected to operate the subject retail area as a self-service environment in which customers independently accessed and handled merchandise displayed on shelving and store fixtures.
59. Defendants' self-service merchandising operation exposed customers to risks arising from merchandise displays, shelving, the placement of heavy merchandise, customer interaction with merchandise, and the foreseeable dislodgement or falling of improperly secured merchandise.
60. There was a direct nexus between Defendants' self-service shelving and display of a heavy steel shovel and the risk that the shovel would fall into the customer-accessible area where Plaintiff was injured.
61. Where a substantial risk of injury is inherent in a business operator's chosen method of operation, a plaintiff may be entitled to an inference of negligence without proof of actual or constructive notice of the particular dangerous condition. Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 565 (2003).
62. Defendants had a duty to employ safety measures commensurate with the foreseeable risks created by their self-service operation and the overhead storage and display of heavy merchandise. Craggan v. Ikea United States, 332 N.J. Super. 53, 62 (2000).
63. Defendants breached that duty by failing to design, maintain, inspect, stock, secure, and supervise the shovel display and surrounding retail area in a manner reasonably calculated to protect customers from foreseeable injuries caused by falling merchandise.
64. As a direct and proximate result of Defendants' negligence and unsafe mode of operation, Plaintiff sustained the injuries and damages alleged in this Complaint.

COUNT III

Alternative Premises Liability and Failure to Warn

(Against All Defendants)

65. Plaintiff repeats and realleges Paragraphs 1 through 69 as though fully set forth herein.
66. Plaintiff was a business invitee on Defendants' premises, present for purposes within the scope of Defendants' invitation and for Defendants' commercial benefit.
67. Defendants owed Plaintiff an affirmative duty of reasonable care to provide a reasonably safe environment for the activities within the scope of their invitation, including reasonable inspection to discover dangerous conditions and reasonable measures to correct or warn of such conditions.
68. The unsecured or inadequately secured elevated placement of a heavy steel shovel constituted a dangerous condition and concealed hazard to customers walking beneath or near the shelving.
69. Plaintiff had no reasonable notice of the danger that the shovel could fall from the elevated shelf and no meaningful opportunity to avoid that danger.
70. Defendants had the opportunity and ability to inspect the shelf and merchandise display; secure, relocate, remove, or safely store the shovel; install appropriate retaining devices or protective barriers; and warn customers until the condition was corrected.
71. Defendants breached their premises-liability duties by failing to conduct reasonable inspections, failing to identify and eliminate the dangerous condition, failing to maintain the merchandise display in a reasonably safe condition, and failing to provide an adequate warning of the risk of falling merchandise.
72. Defendants' breach of their duty to inspect, maintain, correct, and warn was a direct and proximate cause of Plaintiff's injuries and damages.

COUNT IV

Alternative Products Liability Act Claim for

Defective Elevated Merchandise Display System and Failure to Maintain and Inspect

(Against Target Corporation and ABC Corporations 1-10)

73. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.
74. This Count is pleaded in the alternative and applies to the extent discovery establishes that the elevated shelving, display system, retaining mechanism, fixture, component parts, or related apparatus from which the shovel fell constituted a product placed in the stream of commerce and that Target Corporation, one or more ABC Corporations, or another Defendant was a manufacturer or product seller within the meaning of the New Jersey Products Liability Act.
75. A product-liability action may be maintained where a claimant proves that the product causing harm was not reasonably fit, suitable, or safe for its intended purpose because it deviated from specifications, lacked adequate warnings or instructions, or was defectively designed. N.J. Stat. § 2A:58C-2.
76. Upon information and belief, the elevated merchandise display system, including its shelving, supports, retaining devices, guards, restraints, and/or associated components, was not reasonably fit, suitable, or safe for its intended purpose because it failed to safely retain heavy all-steel merchandise above an area in which customers were invited and expected to walk.
77. Upon information and belief, the subject display system was defective because it lacked adequate retaining devices, guards, barriers, restraints, instructions, warnings, inspection requirements, maintenance procedures, and/or other reasonably necessary safety measures to prevent a heavy shovel from dislodging and falling into a customer-accessible area.

78. Upon information and belief, Target Corporation and/or one or more ABC Corporations exercised significant control over the design, manufacture, assembly, installation, packaging, labeling, maintenance, inspection, stocking, or safety configuration of the elevated merchandise display system; knew or should have known of its unsafe condition; and/or created the defect that caused Plaintiff's injuries. N.J. Stat. § 2A:58C-9.
79. Defendants failed to maintain and inspect the elevated merchandise display system in accordance with its intended safety function and failed to identify, correct, replace, repair, guard, or remove dangerous defects or conditions that permitted heavy merchandise to fall.
80. Defendants failed to provide adequate warnings or instructions concerning the safe loading, stocking, weight limitations, positioning, retention, inspection, maintenance, and customer-area use of the elevated merchandise display system.
81. The defective condition of the elevated merchandise display system, and Defendants' failure to maintain and inspect that system, was a direct and proximate cause of the shovel falling, striking Plaintiff, and causing the injuries and damages alleged in this Complaint.
82. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained and will continue to sustain the damages alleged in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hector Emmanuel Vargas Santos demands judgment against Defendants Target Corporation, John Does 1-10, Jane Does 1-10, and ABC Corporations 1-10, jointly, severally, or in accordance with their respective degrees of fault, as follows:

A. Awarding compensatory damages in an amount to be determined at trial for Plaintiff's past and future medical expenses, pain and suffering, emotional distress, mental anguish, aggravation of preexisting conditions, disability, impairment, inconvenience, loss of enjoyment of life, and all other economic and non-economic damages;
B. Awarding prejudgment and post-judgment interest as permitted by law;
C. Awarding costs of suit;
D. Permitting Plaintiff to amend this Complaint to substitute the true names and capacities of John Does 1-10, Jane Does 1-10, and ABC Corporations 1-10 when discovered; and
E. Granting such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.
Dated: September 15, 2026

Respectfully submitted,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. BLACKBURN LAW, PLLC
Attorney ID No. 232602020
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com
*Counsel for Plaintiff*

DESIGNATION OF TRIAL COUNSEL

Plaintiff designates Tyrone A. Blackburn, Esq., as trial counsel for Plaintiff.

Dated: September 15, 2026

Respectfully submitted,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. BLACKBURN LAW, PLLC
Attorney ID No. 232602020
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com
*Counsel for Plaintiff*

CERTIFICATION PURSUANT TO RULE 4:5-1

I certify that, to the best of my knowledge, information, and belief, this matter is not the subject of any other action or arbitration proceeding, except as follows: None.

I further certify that, to the best of my knowledge, information, and belief, no other parties should be joined in this action at this time, except for the fictitiously named defendants John Does 1-10, Jane Does 1-10, and ABC Corporations 1-10, whose identities and roles remain unknown pending discovery.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: September 15, 2026

Respectfully submitted,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. BLACKBURN LAW, PLLC
Attorney ID No. 232602020
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com
*Counsel for Plaintiff*

SUPERIOR COURT OF NEW JERSEY LAW DIVISION - HUDSON COUNTY

**Hector Emmanuel Vargas Santos**

*Plaintiff(s) / Petitioner(s)*

v.

**Target Corporation; JOHN DOES 1-10, fictitious individuals; JANE DOES 1-10, fictitious individuals; and ABC CORPORATIONS 1-10, fictitious entities**

*Defendant(s) / Respondent(s)*

Case No.: HUD-L-003851-26

**AFFIDAVIT OF SERVICE**

I, Tim Brown, being duly sworn, state:

At the time of service, I was a competent adult not having a direct interest in the litigation.

I served the following documents to Target Corporation in Ramsey County, MN on September 29, 2026 at 10:58 am at 1010 Dale St N, Saint Paul, MN 55117-5603 by leaving the following documents with Bob Gustafson who as Intake Specialist at Company Trust Corporation is authorized by appointment or by law to receive service of process for Target Corporation.

CIVIL ACTION SUMMONS, COMPLAINT AND JURY DEAMND, PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT TARGET CORPORATION, PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT TARGET CORPORATION, PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT TARGET CORPORATION, CERTIFICATION, CIVIL CASE INFORMATION STATEMENT
Race: White, Sex: Male, Est. Age: 55-64, Hair: Gray, Glasses: Y, Est. Weight: 160 lbs to 180 lbs, Est. Height: 6' to 6' 3".
Geolocation of Serve: https://google.com/maps?q=44.9714419292,-93.1262985903
Photograph: See Exhibit 1

Total Cost: $90.25

Server Signature
Tim Brown
+1 (651) 357-5555

Subscribed and sworn to before me this 29 day of September 2026, by
Tim Brown
Server Name

Witness my hand and official seal.
Notary Public

My commission expires: Jan 31 2029.

Notary Stamp

PETRINA A OGILVIE
NOTARY PUBLIC MINNESOTA
My Commission Expires Jan. 31, 2029



Scanned with CamScanner